IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 1 9 2006

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

JULIA WEEKES,

          Plaintiff,

v.

MARK REESE, BILL KAUTTER, and
PAUL ROWE,

          Defendants.

CIVIL ACTION NO.

1:05-CV-1040-JEC

## O R D E R  &  O P I N I O N

This case is presently before the Court on defendants' Motion for Summary Judgment [34].  The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motion for Summary Judgment [34] should be **GRANTED**.

### BACKGROUND

This is an employment discrimination case.  Plaintiff is a black female.  (Pl.'s Statement of Issues That Remain to Be Tried ("Pl.'s SOI") [38] at ¶ 1.)  She was formerly employed by RSUI Group, Inc. ("RSUI"), a specialty insurance company.  (Defs.' Statement of Undisputed Material Facts ("Defs.' SUMF") [34] at ¶ 1.)  Plaintiff claims that defendants, her supervisors at RSUI, discriminated and

AO 72A
(Rev.8/82)

retaliated against her when they refused to promote her in March, 2004 and terminated her employment in August, 2004. (Amended Compl. [25].)

Plaintiff began working for RSUI's predecessor in June, 2001, as a Claims Specialist in the General Liability ("GL") Unit. (Defs.' SUMF at ¶ 8.) Plaintiff's job duties in the GL Unit were to review, investigate, and resolve claims made by insureds. (*Id.* at ¶ 9.) Beginning in December, 2002, plaintiff was supervised by defendant Mark Reese, the Claims Unit Manager of the GL Unit. (*Id.* at ¶ 10.)

Reese supervised plaintiff from December, 2002 until late 2003 or early 2004, when plaintiff was transferred to the Directors & Officers ("D&O") Unit. (*Id.* at ¶ 10; Pl.'s SOI at ¶ 10.) Plaintiff performed adequately while under Reese's supervision. (Defs.' SUMF at ¶ 11.) On her 2003 Review, Reese rated plaintiff a "3--Meets Expectations." (Reese Aff. [34] at Ex. 1.) He noted that plaintiff demonstrated "solid basic insurance claims knowledge," and that she exhibited a "commendable attitude." (*Id.*)

At some point in 2003, plaintiff expressed interest in obtaining a promotion to the Assistant Vice-President ("AVP") level. (Pl.'s SOI at ¶ 12.) Defendant Bill Kautter, RSUI's Executive Claims Manager and defendant Reese's direct supervisor, was responsible for promoting employees to the AVP level. (Defs.' SUMF at ¶ 20.) Kautter made promotion decisions based on recommendations from Unit

2

Managers and his own review of recommended employees'
accomplishments. (*Id.*)

RSUI announced its AVP promotions in March, 2004. (*Id.* at ¶
17.) Reese did not recommend plaintiff for a promotion, and Kautter
therefore did not consider her candidacy. (*Id.* at ¶ 21.) Reese
instead recommended Therese Huber, a white female, based on her
"exceptional skill level in handling complex primary casualty cases."
(*Id.*) Reese claims that he did not recommend plaintiff for promotion
because she did not demonstrate outstanding performance and she did
not exhibit the technical competence necessary to be promoted to the
AVP position. (Defs.' SUMF at ¶ 22.) In addition to Huber, Kautter
promoted Robert Orr, a white male, and Elaine Thomas, a black female.
(*Id.* at ¶ 18.)

After the March, 2004 announcement, plaintiff requested a
meeting with Human Resources to discuss her failure to receive the
AVP promotion. (*Id.* at ¶ 25; Pl.'s SOI at ¶ 26.) Plaintiff did not
allege that the promotion decision was racially motivated. (Donahue
Aff. [34] at Ex. 4.) She simply informed Human Resources that she
believed she had worked hard for a promotion and wanted to know where
she had fallen short. (*Id.*) Pam Donahue investigated plaintiff's
concerns. (Defs.' SUMF at ¶¶ 26, 29; Pl.'s SOI at ¶ 28.)

As part of the investigation, Donahue met with plaintiff and
Reese. (*Id.*) At the meeting, Reese informed plaintiff that, while

3

her performance on basic claims in the GL Unit had been adequate, she had not demonstrated proficiency in handling more complex claims. (Defs.' SUMF at ¶ 29; Pl.'s SOI at ¶ 28.)   Reese further explained that plaintiff's performance was not exceptional enough to merit promotion to the AVP position, as demonstrated by plaintiff's "Meets Expectations" rating on her 2003 Review.   (*Id.*)   Reese followed up on the meeting by providing specific examples of plaintiff's work product supporting his promotion decision.   (Donahue Aff. at Ex. 8.)

Donahue also arranged a meeting between plaintiff and her new supervisor in the D&O Unit, defendant Paul Rowe.   (Defs.' SUMF at ¶ 28.)   Plaintiff had been transferred to the D&O Unit in late 2003 or early 2004.   (*Id.* at ¶ 10.)   The D&O Unit handles complex claims, and its employees are responsible for communicating with insureds on a number of technical issues.   (*Id.* at ¶ 35.)   Plaintiff had been working in the D&O Unit for a few months when she complained to Human Resources about the AVP promotion.   (*Id.* at ¶¶ 10, 25.)

Per Donahue's request, Rowe met with plaintiff in early April, 2004.   (*Id.* at ¶¶ 31, 32.)   At this meeting, Rowe informed plaintiff that she was not performing adequately in the D&O Unit, and that promotion was not presently on her horizon.   (*Id.*)   Specifically, Rowe told plaintiff that she needed to improve her written communication skills and her ability to handle claims independently without close monitoring.   (Defs.' SUMF at ¶ 32; Donahue Aff. at Ex.

4

7.)  He produced examples of plaintiff's unsatisfactory work product and explained to plaintiff that she needed to focus on bringing her work performance up to an acceptable level for the D&O Unit.  (Defs.' SUMF at ¶ 32; Pl.'s SOI at ¶ 33.)

Donahue gave plaintiff an opportunity to submit a written response to Reese and Rowe's comments.  (Defs.' SUMF at ¶ 30.)  In her response, plaintiff disagreed with her supervisors' assessment of her skills and work product, but never indicated that she believed the promotion decision to be racially motivated.  (Donahue Aff. at Ex. 6.)  On April 28, 2004, plaintiff participated in a final meeting with Donahue to conclude Human Resources' investigation concerning the AVP promotions.  (*Id.* at Ex. 8.)  During this meeting, plaintiff reiterated her disagreement with Reese and Rowe's evaluation of her skills and performance, but again did not mention racial discrimination.  (*Id.*)

Throughout the spring and early summer of 2004, plaintiff continued to have problems meeting Rowe's expectations in the D&O Unit.  (Defs.' SUMF at ¶¶ 37-39; Pl.'s SOI at ¶¶ 34-36.)  Rowe made plaintiff aware of numerous errors in her work, including typographical and formatting mistakes, as well as more substantive errors in her handling of claims.  (Defs.' SUMF at ¶ 37; Pl.'s SOI at ¶ 35.)  On June 8, 2004, Rowe issued plaintiff a verbal warning

encouraging plaintiff to improve her written communications.[1] (Donahue Aff. at Ex. 9.)   In the verbal warning, Rowe informed plaintiff that:

> There have been consistent issues with style, grammar and substance in draft correspondence you have submitted on which we need to see immediate and sustained improvement. I need to feel as though you can be autonomous on files, and I have not had that feeling to date.

(*Id.*)   Rowe also provided plaintiff with numerous examples of her claims letters that required substantial edits and rewrites.   (*Id.* at Ex. 10.)

On July 14, 2004, Rowe issued plaintiff a written warning. (Defs.' SUMF at ¶ 41; Donahue Aff. at Ex. 11.)   In the written warning, Rowe stated:

> [Plaintiff] has demonstrated repeated and prolonged inability to deliver written work product and substantive assessment of claim files that is satisfactory.   There is a demonstrated carelessness or inexcusable omission in finished work product, a frequent failure or inability to understand basic issues in directors and officers insurance coverage, and a marked inability to create clear, concise and grammatically, stylistically or substantively acceptable correspondence pertaining to claim files.

(Donahue Aff. at Ex. 11.)   Rowe again provided numerous examples of

---

[1]   RSUI has adopted "Counseling for Improved Performance" ("CFIP") procedures to assist employees experiencing performance problems.   (Defs.' SUMF at ¶ 8.)   The CFIP procedures include a progressive discipline system that begins with a verbal warning, and progresses to a written warning, a final warning, and ultimately termination if the problem is not corrected.   (*Id.* at ¶¶ 8, 39, 41.)

AO 72A
(Rev.8/82)

work reflecting plaintiff's performance problems.  (*Id.*)

Donahue scheduled a meeting with plaintiff and Rowe to discuss the written warning.  (*Id.*)  During the meeting, plaintiff stated that she disagreed with Rowe's assessment of her skills, and that she believed Rowe was being "picky" in his expectations.  (*Id.*)  However, plaintiff still did not claim that the disciplinary action was racially motivated.  (*Id.*)

On July 19, 2004, plaintiff submitted a written response to the warning.  (Donahue Aff. at Ex. 14.)  In her response, plaintiff acknowledged that during the entire seven-month period that she worked in the D&O Unit, Rowe "ha[d] yet to return correspondence without some type of edit . . . spann[ing] the areas of typing, spacing, margins and wording."  (*Id.*)  She further acknowledged that Rowe had "expressed on multiple occasions an inability to meet his assigned tasks . . . in a timely fashion due to his having to assist and train [plaintiff]."  (*Id.*)  However, plaintiff suggested that the problem was not in her performance, but in Rowe's unrealistic expectations and inadequate leadership and training abilities.  (*Id.*)  Plaintiff also stated, for the first time, that she believed she was "being discriminated against and treated unfairly."  (*Id.*)

Rowe placed plaintiff on final warning on August 16, 2004.  (Donahue Aff. at Ex. 16.)  In the final warning, Rowe reiterated plaintiff's continued inability to produce satisfactory written work.

7

(*Id.*)  Donahue scheduled another meeting with Rowe and plaintiff on August 16th to discuss the final warning.  (*Id.* at Ex. 17.)  During the meeting, Rowe produced additional examples of plaintiff's work showing that she had not made any improvement.  (*Id.*)  Rowe also informed plaintiff that, while she was on written warning, she had committed the serious error of letting a claim file proceed into default.  (*Id.* at Ex. 17; Defs.' SUMF at ¶ 47.)

Plaintiff did not formally respond to the final warning. (Defs.' SUMF at ¶ 49; Pl.'s SOI at ¶ 43.)  However, she did send an e-mail to Donahue on August 17, 2004, addressing the defaulted claim file.  (Donahue Aff. at Ex. 18.)  Plaintiff did not provide any justification for letting the file proceed into default.  (*Id.*) Instead, plaintiff questioned Rowe's decision to bring the default to her attention at the final warning meeting when "there was ample opportunity to discuss the file with [her] prior to the meeting and after the meeting."  (*Id.*)

Plaintiff's response to the final warning and to the defaulted file convinced Rowe that plaintiff did not appreciate the seriousness of her error, particularly as it occurred while she was already on written warning.  (Defs.' SUMF at ¶ 51.)  On August 27, 2004, Rowe requested a meeting with Kautter and Donahue, during which he recommended that plaintiff be terminated.  (*Id.* at ¶ 52.)  Kautter made the decision to terminate plaintiff on August 30, 2004.  (*Id.* at

8

¶ 53; Donahue Aff. at Ex. 20.)

Plaintiff filed a charge of discrimination with the EEOC on August 16, 2004. (Donahue Aff. at Ex. 19.) In her charge, plaintiff alleged that RSUI had discriminated against her by denying her the AVP promotion. (*Id.*) She asserted claims of race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). (*Id.*) She also claimed that RSUI had retaliated against her by putting her on written warning. (*Id.*)

The RSUI Human Resources department received notice of plaintiff's EEOC charge sometime after August 20, 2004. (*Id.*) Because plaintiff was already on final warning, Human Resources decided not to inform Kautter, Reese, or Rowe of plaintiff's charge. (Defs.' SUMF at ¶ 58.) Consequently, Kautter and Rowe did not know that plaintiff had filed an EEOC Charge when Rowe recommended that plaintiff be terminated, or when Kautter terminated plaintiff's employment on August 30, 2004. (*Id.* at ¶ 59.)

The EEOC issued a notice of right to sue on plaintiff's claims on January 14, 2005. (Pl.'s Aff. [39] at Ex. 17.) Plaintiff subsequently filed this lawsuit against RSUI and defendants Reese, Rowe and Kautter, asserting claims for race and gender discrimination in violation of Title VII, race discrimination in violation of 42

9

U.S.C. § 1981, and age discrimination in violation of the ADEA. (Compl. [1].)

Plaintiff failed to serve RSUI, and the Court dismissed RSUI as a party. (Order [13].) After RSUI's dismissal, plaintiff filed an Amended Complaint asserting race discrimination and retaliation claims against defendants Reese, Rowe and Kautter under § 1981.[2] (Amended Compl. [14], [25].) Defendants have filed a motion for summary judgment on plaintiff's § 1981 claims, which is presently before the Court. (Defs.' Mot. for Summ. J. [34].)

## DISCUSSION

### I.    Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."" FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could

---

[2] Individual defendants cannot be held liable under Title VII or the ADEA. *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir. 1991); *Smith v. Lomax,* 45 F.3d 402, 403 n. 4 (11th Cir. 1995). Accordingly, the Court dismissed plaintiff's Title VII and ADEA claims against Reese, Rowe and Kautter after dismissing RSUI as a party. (Order [13].)

AO 72A
(Rev.8/82)

return a verdict for the nonmovant.  *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits.  Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion.  *Id.* at 323.  However, the movant is not required to negate his opponent's claim.  The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case."  *Id.* at 325.  After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  While the court is to view all evidence and factual inferences in a light

11

most favorable to the non-moving party, *Samples v. City of Atlanta*,
846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some*
alleged factual dispute between the parties will not defeat an
otherwise properly supported motion for summary judgment; the
requirement is that there be no *genuine* issue of *material* fact."
*Anderson*, 477 U.S. at 247-48 (1986).

## II.  Plaintiff's Failure to Promote Claim[3]

Plaintiff does not present any direct evidence of
discrimination.  *See Damon v. Fleming Supermarkets of Fla., Inc.,* 196
F.3d 1354, 1358-59 (11th Cir. 1999) (explaining that "'only the most
blatant remarks, whose intent could be nothing other than to
discriminate' . . . will constitute direct evidence") (quoting *Earley
v. Champion Int'l Corp.,* 907 F.2d 1077, 1081-82 (11th Cir. 1990)).
Accordingly, the *McDonnell Douglas* burden-shifting framework is
applicable to this case.  *See Alexander v. Fulton County,* 207 F.3d
1303, 1339 (11th Cir. 2000) (applying *McDonnell Douglas* to
plaintiff's discriminatory promotion claim).  Under this framework,
plaintiff initially has the burden of establishing a *prima facie* case
of race discrimination.  *Id.  See also, Cleveland v. Home Shopping
Network, Inc.,* 369 F.3d 1189, 1193 (11th Cir. 2004) (citing *Wascura*

---

[3]  Defendant Rowe was not involved in the promotion decision.
(Defs.' SUMF at ¶ 24.)  Accordingly, only defendants Reese and
Kautter are potentially liable on plaintiff's failure to promote
claim.

12

*v. City of South Miami,* 257 F.3d 1238, 1242 (11th Cir. 2001)).   Once plaintiff establishes a *prima facie* case, the burden shifts to defendants to articulate a legitimate, non-discriminatory reason for their employment decision.   *Alexander,* 207 F.3d at 1339.   If defendants meet their burden, plaintiff must produce some evidence that defendants' articulated reason is "unworthy of credence," and a pretext for discrimination, in order to survive summary judgment. *Cleveland,* 396 F.3d at 1193.

### A.   Plaintiff's *Prima Facie* Case

To establish a *prima facie* case of discriminatory failure to promote, plaintiff must show that: 1) she is a member of a protected minority; 2) she applied and was qualified for a promotion; 3) she was denied the promotion; and 4) other equally or less qualified employees who are not members of the protected minority were promoted.   *Alexander,* 207 F.3d at 1339.[4]   *See also, Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 642 (11th Cir. 1998). Plaintiff is a member of a protected minority, and it is undisputed that she expressed interest in, but was denied, the AVP promotion. (Pl.'s Opp. [37] at 2; Donahue Aff. at Ex. 4.)   However, there is no

---

[4]   The same *prima facie* case and burden-shifting mechanisms apply to Title VII and Section 1981 discrimination claims.   *Summerlin v. M&H Valve Co.,* 167 Fed. Appx. 93 (11th Cir. 2006).   Accordingly, "decisions construing Title VII are applicable to all of [plaintiff's] claims."   *Id.*

13

evidence that plaintiff was qualified for the promotion, or that equally or less qualified non-minority employees received the promotion.

The AVP position requires an ability to handle "serious, complex, highly valued claims." (AVP Job Description, attached to Donahue Aff. at Ex. 22.) To obtain the position, a candidate must possess excellent communication skills and "in-depth, practical working knowledge in [the candidate's] area of specialization." (*Id.*) The record does not support plaintiff's claim to have met these criteria. Plaintiff received a "3-Meets Expectations"--as opposed to a "4-Exceeds Expectations"--on her 2003 Review. (Reese Aff. at Ex. 1.) Comments on the Review indicate that plaintiff had "solid *basic* insurance claims knowledge" and that her strength was "*basic* claim handling." (*Id.* (emphasis added).) The Review further states that, while plaintiff had "made progress over the year in honing her capability to write coverage letters," she needed to improve her "written communication abilities." (*Id.*)

Consistent with her 2003 Review, defendant Reese testified that plaintiff was not proficient in handling complex claims, an assessment Reese supported with specific examples of plaintiff's work product. (Reese Aff. at ¶¶ 6,8, 17; Donahue Aff. at Exs. 6 and 8.) He also testified that, while plaintiff's work in the GL Unit was adequate, it was not sufficiently outstanding to merit a promotion to

14

the AVP level.   (Reese Aff. at ¶ 13.)

Plaintiff disagrees with Reese's statements, and with certain aspects of her 2003 Review, but she has not produced any evidence to support her superior evaluation of her own skills and performance. (Pl.'s Opp. [37] at 2-3.)   Plaintiff's conclusory statements are insufficient to establish a *prima facie* case or defeat a motion for summary judgment.  *See Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000)("'This court has consistently held that conclusory allegations without specific supporting facts have no probative value.'")(citing *Evers v. Gen. Motors Corp.,* 770 F.2d 984, 986 (11th Cir. 1985)).

Neither is there any evidence that the promoted employees were equally as qualified as, or less qualified than, plaintiff.   Three employees received the AVP promotion in 2004:  Elaine Thomas, a black female; Robert Orr, a white male; and Therese Huber, a white female. (Defs.' SUMF at ¶ 18.)   Thomas's promotion does not support plaintiff's claim, as Thomas is a member of plaintiff's protected minority group.   As to Orr and Huber, all of the evidence in the record supports defendants' claim that both of these employees were more qualified than plaintiff for the AVP position.   Huber was commended for demonstrating "exceptional skill level in the handling of some of [RSUI's] more difficult primary casualty cases," while Orr was recognized for his "excellent" work in the nursing unit.  (Pl.'s

15

Opp. at Ex. 14; Defs.' SUMF at ¶ 19.)  Plaintiff presents no evidence that these assessments were inaccurate, or that she produced equally "exceptional" or "excellent" work.

No reasonable juror could conclude, based on the evidence in the record, that plaintiff was qualified for the AVP promotion, or that the employees who received the promotion were equally or less qualified.  Accordingly, defendants are entitled to summary judgment on plaintiff's failure to promote claim.

**B.   Defendants' Legitimate, Nondiscriminatory Reasons for Not Promoting Plaintiff**

Even if plaintiff were able to establish a *prima facie* case, defendants would still be entitled to summary judgment.  Defendants explain that they did not promote plaintiff because she lacked the ability to handle complex claims and did not exhibit the outstanding performance necessary to obtain the AVP position.   (Defs.' Br. in Supp. of Summ. J. ("Defs.' Br.") [34] at 5.)  Both of these reasons are well-supported by documentary evidence and testimony in the record.

Regarding plaintiff's claims handling skills, defendant Reese testified that plaintiff lacked the technical proficiency to handle complex claims.  (Reese Aff. at ¶ 6.)  In a meeting with plaintiff and Donahue in April, 2004, Reese explained that, while plaintiff had good basic claims handling skills, she could not handle the highly

16

complex claims that were required at the AVP level. (Donahue Aff. at Ex. 6.) To support his assessment, Reese analyzed the files that plaintiff had handled in 2003. (*Id.* at Ex. 8.) He found that the majority of plaintiff's work involved simple, small claims. (*Id.*) He also produced specific examples of plaintiff's work product that was not at the AVP level. (*Id.*) Plaintiff's supervisor in the D&O Unit, defendant Rowe, similarly testified that plaintiff lacked the technical proficiency to handle complex claims. (Rowe Aff. at ¶¶ 5,6.)

As to plaintiff's performance, Reese testified that plaintiff's work in the GL Unit in 2003 was adequate, but not outstanding. (Reese Aff. at ¶ 2.) In the meeting with plaintiff and Donahue, Reese pointed out specific deficiencies in plaintiff's performance, such as plaintiff's difficulty drafting coverage letters. (Donahue Aff. at Ex. 5.) Defendant Rowe confirmed that plaintiff's written work was substandard. (Rowe Aff. at ¶¶ 7-9.) Specifically, Rowe testified that plaintiff "consistently demonstrated carelessness, sloppiness and an inability to understand technical issues in her written work product." (*Id.* at ¶ 8.)

As noted, the AVP position requires excellent written communication skills and the ability to handle "serious, complex, highly valued claims." (AVP Job Description, attached to Donahue Aff. at Ex. 22.) All of the documentary evidence and testimony in

17

the record, with the exception of plaintiff's own affidavit, suggests that plaintiff did not meet these requirements.  The Court thus finds that defendants have met their "exceedingly light burden" of articulating a legitimate, non-discriminatory reason for their refusal to promote plaintiff to the AVP position.  *See Perryman v. Johnson Prods. Co., Inc.,* 698 F.2d 1138, 1142 (11th Cir. 1983).

### C.    Pretext

Once defendants proffer sufficiently probative, credible, non-discriminatory reasons for their actions, as they have in the instant case, plaintiff must come forward with specific evidence tending to show that such reasons were a pretext for discrimination.  *Alexander,* 207 F.3d at 1339.  *See also Chapman v. AI Transp.,* 229 F.3d 1012, 1025 (11th Cir. 2000)(noting that plaintiff must rebut *each* of the employer's proffered reasons for its challenged action) (emphasis added) (citing *Combs v. Plantation Patterns,* 106 F.3d 1519, 1529 (11th Cir. 1997)).  Plaintiff has not met this burden.

In opposition to defendants' motion for summary judgment, plaintiff has submitted her own affidavit and several exhibits. (Pl.'s Aff. [39].)  Most of plaintiff's statements in her affidavit are completely irrelevant.[5]  None of her statements is sufficient to

---

[5] Plaintiff complains, for example, that "RSUI Group, Inc. hired and promoted whites in a higher number than minorities." (Pl.'s Aff. [39] at ¶ 11.)  Aside from the fact that this statement is unsupported by any evidence in the record, plaintiff is not suing

create an issue of fact on pretext. *See Hilburn v. Murata Elec. N.
Am., Inc.,* 181 F.3d 1220, 1228 (11th Cir. 1999)("Conclusory
allegations without specific supporting facts have no probative
value."). Plaintiff's exhibits are similarly unhelpful to her case.
Plaintiff has simply failed to produce any evidence that would permit
an inference that defendants' articulated reasons for failing to
promote her are pretextual. *Id.* For this additional reason,
defendants are entitled to summary judgment on plaintiff's failure to
promote claim.

## III. Plaintiff's Discipline and Termination Claims[6]

Plaintiff claims that defendants unfairly disciplined her, and
ultimately terminated her, on the basis of her race. (Pl.'s Opp.
[37] at 5.) The Court utilizes the *McDonnell Douglas* framework
described above to analyze plaintiff's discriminatory discipline and
termination claims. *See Lathem v. Dep't of Children and Youth
Servs.,* 172 F.3d 786, 793 (11th Cir. 1999) and *Holifield v. Reno,* 115
F.3d 1555, 1564-65 (11th Cir. 1997).

---

RSUI, but three individual supervisors. Defendants Reese, Rowe, and
Kautter are not individually liable for the corporate actions of
RSUI.

[6] Defendant Reese did not supervise plaintiff after she
transferred to the D&O department, and he was not involved in the
decision to discipline or terminate her. (Reese Aff. at ¶ 9.)
Accordingly, only defendants Rowe and Kautter are potentially liable
on plaintiff's discriminatory discipline and termination claims.

### A.    Plaintiff's *Prima Facie* Case

To establish a *prima facie* case of discriminatory discipline or termination, plaintiff must show that:  1) she belongs to a racial minority; 2) she was qualified for her job; 3) defendants subjected her to an adverse employment action; and 4) defendants treated similarly situated employees outside plaintiff's class more favorably than they treated plaintiff. *Knight v. Baptist Hosp. of Miami, Inc.,* 330 F.3d 1313, 1316 (11th Cir. 2003).  Plaintiff is a minority, and the Court will assume that she was minimally qualified for her position in the D&O Unit.  Defendants subjected plaintiff to an adverse employment action, if not by disciplining her, then by terminating her employment.  However, there is no evidence in the record that defendants treated similarly situated non-minority employees more favorably than they treated plaintiff.

Defendant Rowe gave plaintiff a verbal warning on June 8, 2004 as a result of "consistent issues with style, grammar and substance" in plaintiff's written work. (Donahue Aff. at Ex. 9.)  Approximately a month later, Rowe gave plaintiff a written warning as a result of her "repeated and prolonged inability to deliver written work product and substantive assessment of claim files that is satisfactory." (*Id.* at Ex. 14.)  On August 16, 2004, Rowe put plaintiff on final notice because of her failure to correct the above problems and, specifically, because of her "demonstrated carelessness or

20

inexcusable omission in finished work product, and marked inability to create clear, concise and grammatically, stylistically or substantively acceptable correspondence pertaining to claim files." (*Id.* at Ex. 16.)

There is no evidence that other employees produced similarly deficient written work, or that Rowe treated any such employees more favorably than he treated plaintiff.  Plaintiff makes a vague reference in her affidavit to Cindy Portinga, "a white female who came to . . . Rowe's unit around the same time" as plaintiff.  (Pl.'s Aff. [39] at ¶ 49.)  Plaintiff states that she believes Rowe treated Portinga more favorably than he treated plaintiff.  (*Id.*)  However, there is no evidence in the record that Portinga, like plaintiff, was unable to produce written work that was grammatically and substantively correct.  *See Knight,* 330 F.3d at 1316 (noting that employees are only "similarly situated" if they are "involved in or accused of the same or similar conduct" as plaintiff).  And even assuming that Portinga's work contained similar errors, there is no evidence in the record that Rowe failed to discipline Portinga in the same manner that he disciplined plaintiff.  Plaintiff's statement concerning Portinga is the perfect example of the type of conclusory allegation that is insufficient to establish a *prima facie* case or defeat summary judgment.  *See Earley,* 907 F.2d at 1081 (holding that plaintiff's "[m]ere conclusory allegations and assertions will not

21

suffice" to defeat summary judgment).

Plaintiff's statements concerning her termination are similarly unavailing. Defendants have produced evidence that plaintiff, while on written warning, failed to answer a complaint, letting a claim file proceed into default. (Defs.' SUMF at ¶ 47.) This was a serious error, which plaintiff did not even attempt to explain. (*Id.*; Donahue Aff. at Ex. 18.) Defendants have also produced documents and testimony showing that plaintiff continued to exhibit performance problems in her written work, in spite of several warnings. (Defs.' SUMF at ¶ 50.) Consequently, Rowe recommended that plaintiff be terminated, and Kautter terminated plaintiff's employment on August 30, 2004. (*Id.* at ¶¶ 52-53.)

There is no evidence in the record that defendants retained any non-minority employees who made serious errors, such as letting a claim file slip into default, while on verbal or written warning. (*See* Pl.'s Opp. [37] and Pl.'s Aff. [39].) Likewise, there is no evidence that defendants retained any non-minority employees who, in spite of several warnings, produced consistently substandard written work. (*Id.*) As plaintiff cannot establish a *prima facie* case, defendants are entitled to summary judgment on her discriminatory discipline and termination claim.

### B.   Legitimate Non-Discriminatory Reasons

In addition, and as is apparent from the above discussion,

defendants have easily met their burden of articulating legitimate, non-discriminatory reasons for disciplining plaintiff and terminating her employment.  Rowe informed plaintiff in April, 2004 that her written work did not meet his expectations.  (Rowe Aff. at ¶ 11; Donahue Aff. at Ex. 7.)  Specifically, Rowe explained that plaintiff's work "consistently demonstrated carelessness, sloppiness and an inability to understand technical issues."  (Rowe Aff. at ¶ 8.)  Rowe told plaintiff that she needed to listen and respond to his criticisms, and learn how to "look at a complaint, assess coverage and create a coverage position letter ready to go out the door." (Donahue Aff. at Ex. 7.)

Plaintiff's work did not improve after the April, 2004 meeting. (Rowe Aff. at ¶ 12.)  Consequently, Rowe gave plaintiff a verbal warning on June 8, 2004.  (*Id.* at ¶ 13; Donahue Aff. at Ex. 9.)  In the verbal warning, Rowe informed plaintiff that there were "consistent issues with style, grammar and substance in draft correspondence" that plaintiff had submitted.  (Donahue Aff. at Ex. 9.)  He told plaintiff, again, that she needed to submit correspondence in "a final form that is adequate to 'go out the door.'"  (*Id.*)  Rowe attached numerous examples of plaintiff's deficient letters to the verbal warning.  (*Id.*)  Those letters, which are part of the summary judgment record, support defendants' claim to have disciplined plaintiff as a result of her poor work performance,

23

as opposed to her race.

Apparently, plaintiff's work did not improve even after the verbal warning. (Rowe Aff. at ¶ 15.) Accordingly, after consulting with Human Resources, Rowe issued a written warning to plaintiff on July 15, 2004. (*Id.*; Donahue Aff. at Ex. 11.)   In the written warning, Rowe cited plaintiff's "demonstrated repeated and prolonged inability to deliver written work product and substantive assessment of claim files that is satisfactory." (Donahue Aff. at Ex. 11.) Rowe further stated that "[t]here is a demonstrated carelessness or inexcusable omission in finished work product, a frequent failure or inability to understand basic issues in directors and officers insurance coverage, and a marked inability to create clear, concise and grammatically, stylistically or substantively acceptable correspondence pertaining to claim files." (*Id.*)   Rowe again attached numerous examples of plaintiff's unacceptable work product, which are part of the summary judgment record and further justify defendants' decision to place plaintiff on written warning.

While plaintiff was on written warning, she failed to answer a complaint and let a claim file proceed into default. (Rowe Aff. at ¶ 17.) This was a serious error. (*Id.*) In addition, Rowe did not observe any improvement in plaintiff's written work product. (*Id.*) Rowe therefore decided to put plaintiff on final notice. (*Id.* at ¶ 18.)   Rowe delivered the final notice to plaintiff on August 16,

24

2004, attaching more recent examples of her substandard written work. (*Id.*) Plaintiff's work samples, and other documentation in the record, fully support defendants' asserted reason for putting plaintiff on final notice. (Donahue Aff. at Exs. 9-16.)

Plaintiff did not formally respond to the final warning. (Defs.' SUMF at ¶ 49; Pl.'s SOI at ¶ 43.) However, she did send an e-mail to Donahue on August 17, 2004, addressing the defaulted claim file. (Donahue Aff. at Ex. 18.) In her e-mail, plaintiff did not provide any justification for letting the file proceed into default. (*Id.*) Instead, plaintiff questioned Rowe's decision to bring the default to her attention at the final warning meeting when "there was ample opportunity to discuss the file with [her] prior to the meeting and after the meeting." (*Id.*)

Plaintiff's e-mail response convinced Rowe that plaintiff did not appreciate the seriousness of her error, particularly as it occurred while she was already on written warning. (Defs.' SUMF at ¶ 51.) He therefore recommended to Kautter that plaintiff's employment be terminated. (Rowe Aff. at ¶ 19, 21.) All of the evidence in the record, again with the sole exception of plaintiff's own affidavit, supports defendants' claim that they terminated plaintiff's employment as a result of her response to the final warning and her history of unacceptable work performance in the D&O Unit, and not on account of her race. (Donahue Aff. at Exs. 9-16;

25

Rowe Aff. at ¶¶ 5-21; Kautter Aff. at ¶¶ 14-18.)

### C.   Pretext

Plaintiff concedes that her written work in the D&O Unit consistently contained substantive, grammatical, stylistic, and formatting errors. (*See* Pl.'s Aff. [39] at Pl.'s SOI [37].) Given the evidence in the record, it would be difficult to argue otherwise. (*See* Donahue Aff. at Exs. 9-16.) Plaintiff herself has acknowledged that during her entire seven-month period in the D&O Unit, Rowe never returned correspondence "without some type of edit." (*Id.* at Ex. 14.) Plaintiff attributes many of her typographical and formatting errors to her assistant, who she claims was responsible for typing her letters. (Pl.'s SOI at ¶ 34.) The assistant's typographical errors do not explain the substantive and grammatical mistakes in plaintiff's written work. In any event, Rowe obviously expected plaintiff to review her written work, after it was typed, to ensure that it was in final form and "ready to go out the door." This was a reasonable expectation. *See Combs,* 106 F.3d at 1543 ("a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer.").

Plaintiff also argues that the problems in her written work were the result of Rowe's unrealistic expectations and his failure to

AO 72A
(Rev.8/82)

provide appropriate training.  (Pl.'s Aff. at ¶ 46; Donahue Aff. at Ex. 14.)  These arguments fall far short of creating an issue of fact on pretext.  Rowe may have been an exacting supervisor, and he may even have been lacking in his desire or ability to train plaintiff. However, there is no evidence that he was discriminatory.  *See Damon,* 196 F.3d at 1361 (emphasizing that courts "are not in the business of adjudging whether employment decisions are prudent or fair.  Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision").

Defendants claim, and the evidence in the record suggests, that they disciplined and ultimately terminated plaintiff because she consistently failed to meet their reasonable, performance-related expectations.  (Defs.' SUMF at ¶¶ 35-53.)  Plaintiff has not responded with any evidence that defendants' asserted reasons are pretextual.  For this additional reason, defendants are entitled to summary judgment on plaintiff's discriminatory discipline and termination claim.

## IV.  Plaintiff's Retaliation Claim

Plaintiff claims that she "was given no negative feedback on [her] work, assigned no additional training for deficiencies, [and] told of no work deficiencies by [defendants] until [she] complained about not being promoted."  (Pl.'s Aff. [39] at ¶ 22.)  From this sequence of events, plaintiff infers that defendants disciplined her,

27

and ultimately terminated her employment, in retaliation for her complaints. (Amended Compl. [1] at ¶ .)

To establish a *prima facie* case of retaliation, plaintiff must show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected expression and the adverse action. *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir. 2000). The Court again applies the *McDonnell Douglas* burden-shifting framework to analyze plaintiff's retaliation claim. *Id.* at 590.

Plaintiff engaged in protected expression when she filed her EEOC charge on August 16, 2004. (Donahue Aff. at Ex. 19.) RSUI's Human Resources department received notice of the charge sometime after August 20, 2004. (*Id.* at ¶ 23.) At this time, plaintiff was already on final notice under the company's progressive discipline procedures. (*Id.* at ¶ 24.) Accordingly, Human Resources decided not to inform plaintiff's supervisors of the charge, to prevent any undue influence on their decisions respecting plaintiff's employment. (*Id.*) As defendants were not aware of plaintiff's EEOC charge, there cannot possibly be any causal connection between plaintiff's filing the charge and her subsequent termination. *Gupta,* 212 F.3d at 590 ("To establish a causal connection, a plaintiff must show that 'the decision-maker[s] [were] aware of the protected conduct'").

28

The only other time plaintiff arguably engaged in protected expression is when she informed defendants, in a letter drafted on July 19, 2004, that she felt she was being "discriminated against" and treated unfairly. (*Id.*)   Two adverse actions occurred after plaintiff made this statement:   1) plaintiff was placed on final notice; and 2) plaintiff was terminated.[7]  However, even assuming that plaintiff's vague reference to discrimination constitutes "protected expression," there is no evidence that plaintiff's final notice or her termination were in any way related to her statement on July 19th.  (See Pl.'s Opp'n [37]; Pl.'s Aff. [39].)

In fact, all of the evidence in the record suggests otherwise. By the time plaintiff complained about her perceived discrimination, she had already received several warnings about her work performance. (Donahue Aff. at Exs. 5-14.)  In spite of those warnings, plaintiff continued to produce unsatisfactory written work, and committed the serious error of letting a claim file proceed into default.  (*Id.* at Ex. 16.)  The record, which contains numerous examples of plaintiff's work product, supports only one conclusion:  that plaintiff was put on final notice, and ultimately terminated, because of prolonged problems in her work performance, and not in retaliation for her

---

[7]  Plaintiff also suggests that her transfer to the D&O Unit was retaliatory.  As the transfer occurred before plaintiff engaged in any protected conduct, the transfer cannot possibly be causally connected the protected conduct.

29

statement that defendants were "discriminating against" her. (*Id.* at Exs. 5-18.)  Accordingly, defendants are entitled to summary judgment on plaintiff's retaliation claim.

Moreover, as discussed above, defendants assert legitimate, non-discriminatory reasons for putting plaintiff on final notice and for terminating her employment.  Defendants contend that plaintiff produced unacceptable written work, and that, while already on warning for performance problems, plaintiff let a claim file slip into default.  (*Id.*)  Plaintiff has not presented any evidence that defendants' explanation for their allegedly retaliatory actions is pretextual.  As a result, and for this additional reason, defendants are entitled to summary judgment on plaintiff's retaliation claim. *See Pennington v. City of Huntsville,* 261 F.3d 1262, 1267 (11th Cir. 2001)(granting summary judgment on plaintiff's retaliation claim where plaintiff failed to adduce sufficient evidence of pretext).

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' Motion for Summary Judgment [34].

SO ORDERED, this __19__ day of December, 2006.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

30